**HARRIS et al., Appellants,**

v.

**ELOFSKEY; Progressive Casualty Insurance Company, Appellee.**

[Cite as *Harris v. Elofskey* (1989), 65 Ohio App.3d 342.]

Court of Appeals of Ohio,
Montgomery County.

No. CA 11396.

Decided Nov. 22, 1989.

*Breidenbach, Johnson, Douple, Beyoglides, Leve & Hansen* and *Daryl R. Douple,* for appellants.

*Carmine M. Garofalo,* for appellee, Progressive Casualty Insurance Co.

ROBERT P. RINGLAND, Judge.

This appeal requires us to examine the issue of whether the victim of an automobile collision can recover against the owner's financial responsibility bond, which *expressly* limits coverage to the owner's personal operation of the vehicle, when the owner is a passenger in his or her automobile. Appellants contend that, under the rule of *Ross v. Burgan* (1955), 163 Ohio St. 211, 56 O.O. 218, 126 N.E.2d 592, an owner-passenger is rebuttably presumed to have created an agency relationship requiring the insurer to cover the imputed negligent acts of the driver.

We hold that under Ohio's financial responsibility law, R.C. 4509.01 *et seq.*, and the rule in *True v. Currens* (1985), 27 Ohio App.3d 160, 27 OBR 192, 499 N.E.2d 1287, the language contained in a financial responsibility bond dictates the terms of its coverage. We therefore sustain the trial court's decision to grant summary judgment in favor of appellee.

The facts in this case are straightforward and not disputed. About 2:00 a.m. on July 27, 1985, defendant Patricia Elofskey left a bar in the company of a Mr. Thompson.[1] Thompson agreed to drive Elofskey home using the latter's 1979 Mercury Cougar. While driving down Linden Avenue in Dayton, Ohio, in Elofskey's automobile, Thompson lost control of the car and collided with a house owned by appellant Harris.

As a result of the automobile's collision into Harris' home, Elofskey suffered serious bodily injury. The Harris home sustained $24,722.33 in structural damage. Under a contract of insurance between Harris and appellant Capital Enterprise Insurance Group ("Capital"), the latter paid Harris $24,672.33. Capital then became subrogated to and assigned any claim Harris might hold against Elofskey.

At the time of the collision Elofskey was named as principal on a financial responsibility bond issued by appellee Progressive Casualty Insurance Company ("Progressive"). Progressive is now a party to this action. The bond's coverage ran from November 9, 1984 to November 9, 1985. The bond covered property damage to an aggregate amount of $7,500.

On September 29, 1986, appellants filed a complaint in the Montgomery County Court of Common Pleas against Elofskey for damages arising out of the collision. The first cause of action alleged that Thompson acted as an agent for Elofskey and that both parties negligently operated the automobile. The second cause of action sought recovery directly against Elofskey on a theory of negligent entrustment.

---

1. Thompson is not a party to this appeal.

On April 17, 1987, appellants filed a motion for summary judgment. On May 26, 1987, a court referee filed a report with the court recommending that judgment be granted in favor of appellants. The defendants filed no objection to the report and on June 23, 1988, the court granted judgment in appellants' favor.

The judgment found both Elofskey and Thompson jointly and severally liable to Harris in the sum of $50, and similarly liable to Capital in the sum of $24,722.33. An amended judgment entry, filed September 10, 1987, specifically granted judgment to appellants on the first cause of action against Elofskey and Thompson severally, and upon the second cause of action against Elofskey for the amounts shown. The judgment remains unsatisfied.

On April 20, 1988, appellants filed a supplemental complaint against Progressive for recovery on the financial responsibility bond. Progressive filed an answer. Both parties then filed a motion for summary judgment.

On December 27, 1988, by decision and final entry, the trial court granted Progressive's motion for summary judgment. The trial court found no evidence to support appellants' agency theory. The court also found that the decision in *True v. Currens, supra,* controlled the outcome. The court overruled appellants' motion for summary judgment and dismissed the supplemental complaint.

On January 24, 1989, appellants filed a timely notice of appeal. Appellants cite a single assignment of error:

"The trial court's decision that the financial responsibility bond issued by appellee Progressive Casualty Insurance Company to defendant Patricia Elofskey did not provide coverage to plaintiffs was contrary to law and against the manifest weight of the evidence."

Ohio requires that owners of motor vehicles prove financial responsibility for any accidents resulting from the operation of the vehicle. Ohio's financial responsibility law, R.C. 4509.01 *et seq.,* provides, in part:

"No person shall operate, or permit the operation of, a motor vehicle in this state, unless proof of financial responsibility is maintained with respect to that vehicle, or, in the case of a driver who is not the owner, with respect to his operation of that vehicle." R.C. 4509.101(A).

Proof of financial responsibility must be provided before a person can operate a motor vehicle in Ohio. R.C. 4509.44. Such proof is shown by filing any of four documents: (1) a certificate of insurance; (2) a bond; (3) a certificate that the owner deposited thirty thousand dollars in money or securities with the Treasurer of the state; or (4) a certificate of self-insurance. R.C. 4509.45 and 4509.62. A financial responsibility bond can be issued by an

approved surety company or by two individual sureties whose combined real estate holdings equal an amount twice the value of the bond.  R.C. 4509.59.

Ohio's Financial Responsibility Act requires individual sureties to give prescribed types of coverage to the owner.  R.C. 4509.60 provides, in part:

"Upon acceptance of a bond with individual sureties * * *.  Such bond shall constitute a lien in favor of the state upon the real estate so scheduled or any surety, and the lien shall exist in favor of any holder of a final judgment against the person who has filed the bond, for damages, including damages for care and loss of services, because of bodily injury to or death of any person, or for damage because of injury to property, including the loss of use thereof, resulting from the *ownership, maintenance, or use of a motor vehicle* after such bond was filed, upon filing of notice to that effect by the registrar with the county recorder as provided in this section."

The breadth of these prescriptions does not apply to bonds issued by surety companies.  Thus, the terms of the commercial surety bond govern the breadth of the coverage.

■ Where the terms of a financial responsibility bond or insurance policy are clear and unambiguous, courts may not fashion the language to expand or contract coverage.  Only where enforcement of unambiguous terms will produce a grave injustice, contravene public policy, or concoct an absurd result, should a court tinker with the language contained in the bond or policy.  See, generally, 57 Ohio Jurisprudence 3d (1985), Insurance, Sections 268 and 275.

■ Further, where the meaning of a financial responsibility bond or insurance policy is clear within the four corners of the document, courts should not look to surrounding circumstances in interpreting or producing a result not intended by the parties.  As stated in *Rose v. New York Life Ins. Co.* (1933), 127 Ohio St. 265, 273, 187 N.E. 859, 862, "When the meaning of the contract can be fully and clearly ascertained from its own words, we are at liberty to go no further in search of aid in its interpretation."  This continues to be the law in Ohio.  See, *e.g.*, *Whitley v. Canton City School Dist. Bd. of Edn.* (1988), 38 Ohio St.3d 300, 528 N.E.2d 167 (where the terms of a contract are clear and unambiguous, extrinsic evidence may not be used to aid in interpretation); *Kaplysh v. Takieddine* (1988), 35 Ohio St.3d 170, 519 N.E.2d 382 (where the language of the insurance contract is clear the court will not delve into the parties' intent); *Lockshin v. Blue Cross of Northeast Ohio* (1980), 70 Ohio App.2d 70, 24 O.O.3d 80, 434 N.E.2d 754 (where a fair and reasonable interpretation of an insurance policy can be ascertained from its words, the resolution becomes merely a question of evidence).

A clause in a financial responsibility bond limiting coverage to the owner of a vehicle *while he is personally operating it* is clearly valid in Ohio. *True v. Currens, supra.* In *True,* a limiting clause very similar to the clause contained in Elofskey's bond was found valid and binding. The court stated "surety companies are not required to issue only bonds providing total coverage." *Id.,* 27 Ohio App.3d at 162, 27 OBR at 195, 499 N.E.2d at 1289–1290. A surety may limit coverage in a financial responsibility bond to the principal's personal operation of a motor vehicle. The decision in *True* informs our analysis.

In this particular case the financial responsibility bond contained the following language:

"NOW, THEREFORE, the conditions of this obligation are as follows:

"(b) If on account of *his and only his personal operation of a motor vehicle* on the public streets, roads or highways in Ohio, while this bond remains in force, a judgment is rendered against him, then this bond shall remain in force up to the following specified limits and amounts:

" * * *

"(3) The aggregate amount of $7,500 because of damage to property of others in any one accident." (Emphasis added.)

The language of the bond is clear and unambiguous. Progressive agreed to cover Elofskey for an accident resulting from *her and only her personal operation of a motor vehicle.* As stated above, when the language of a bond or insurance policy is clear on its face, we cannot construe the language to produce a result the parties did not intend to reach. The Financial Responsibility Act does not require that "a single bond provide total coverage, but rather it requires that an individual motorist or motor vehicle owner be responsible for all risks." *True, supra,* 27 Ohio App.3d at 162, 27 OBR at 195, 499 N.E.2d at 1290. Responsibility "for all risks" can be achieved by aggregating numerous types of bonds or securities.

Appellants argue that this case is distinguishable from *True* in that, in *True,* the principal simply loaned his car to another while here Elofskey both loaned her car and was a passenger in it at the time of the accident. Appellants argue, relying on *Ross, supra,* that Elofskey created a presumptive agency relationship with Thompson. Appellants contend that as a result of handing over the car keys, and being a passenger in her own automobile at the time of the accident, Thompson's negligent acts should be imputed, under agency theory, to Elofskey, thus making Progressive liable on the bond. We reject this argument outright.

Although appellants are correct in arguing that a rebuttable presumption of negligence based on agency arises when an owner is a passenger in his automobile, that is not the issue we must resolve. See, *e.g., Ross, supra.* The issue we must resolve is whether the actions of a driver will be imputed to an owner-passenger to contravene the clear and unambiguous language of a financial responsibility bond. We hold that they will not. As noted in *Ross,* " 'The test for determining whether one person is an agent for another in this connection is whether said alleged agent has the right to exercise control over the other as to the work being done.' " *Id.,* 163 Ohio St. at 212, 56 O.O. at 219, 126 N.E.2d at 593. The *Ross* decision then went on to create a presumption that agency existed between the driver and owner of an automobile. We have no quarrel with this position. But the mere fact that this agency presumption exists should not be construed to allow a party to then expand the terms of the financial responsibility bond to cover the negligent conduct of another. The bond was clear on this point: the coverage extended only to the *personal* operation of the automobile by the principal. This is clear, unambiguous, and straightforward.

Since the bond clearly limited coverage to Elofskey while she *personally* operated the automobile, we will not create coverage the parties did not contract for—regardless of the underlying theory of negligence. If the bond had read "if on account of his operation, maintenance, or control of the automobile" in place of "only his personal operation," the result would clearly be different. The bond did not read this way and we will not construe it to so read.

For the reasons stated above we sustain the trial court's decision granting summary judgment in favor of the appellee.

*Judgment affirmed.*

WOLFF, P.J., and BROGAN, J., concur.

ROBERT P. RINGLAND, J., of the Clermont County Common Pleas Court, sitting by assignment.