OPINION
{¶ 1} This is an appeal from the judgment of the Franklin County Court of Common Pleas allowing discovery of certain documents from Mount Carmel East Hospital ("Mt. Carmel"). For the reasons that follow, we affirm in part and reverse and remand in part.
 {¶ 2} On December 26, 1995, Jane Doe went to Mt. Carmel's emergency room for treatment for influenza. Dr. Andrew Schneider treated Ms. Doe and took a history, performed a limited exam and prescribed fever and pain medication to her. Dr. Schneider prepared a medical report from the visit and in that report he stated that Ms. Doe did not have female breast tissue and had male genitalia. Ms. Doe returned to Mt. Carmel's emergency room on January 18, 1996, for treatment of mouth pain. Dr. Schneider again treated Ms. Doe and prepared a second report. The second report stated that Ms. Doe was a cross-dresser and was actually a man even though she claimed to be a woman.
 {¶ 3} In September 1996, Ms. Doe again returned to Mt. Carmel's emergency room and was treated by Dr. Mark Pesa. Following the exam by Dr. Pesa, Ms. Doe spoke with her treating physician. The treating physician informed Ms. Doe that Dr. Pesa thought she (Ms. Doe) was a man, presumably because of Dr. Schneider's reports. Thereafter, Ms. Doe went to Mt. Carmel and lodged a complaint.
 {¶ 4} Further, in 1995, Ms. Doe filed a workers' compensation claim for carpal tunnel syndrome with her employer, ATT corporation. During the course of the claim, ATT requested that Ms. Doe execute authorizations to obtain her medical records, to which she complied. In early 1997, Mt. Carmel forwarded Ms. Doe's medical records to ATT. ATT subsequently confronted Ms. Doe about the statements contained in Dr. Schneider's reports regarding her being a man and a cross-dresser. Ms. Doe alleges that she was subjected to humiliation, harassed and forced out of her job after nearly 30 years with the company. On October 16, 1997, Ms. Doe ("plaintiff") commenced this action against Mt. Carmel, Dr. Schneider and Mt. Carmel Health Systems and asserted, among other things, a claim of negligent credentialing.
 {¶ 5} On November 16, 1998, plaintiff requested that Mt. Carmel produce copies of any documentation used by Mt. Carmel relating to the credentialing of Dr. Schneider as well as copies of all reports/complaints filed against Dr. Schneider by any patient, employee, physician or any other individual. Mt. Carmel objected citing the peer review privilege under R.C. 2305.251
(now 2305.252).[1] In February 2001, plaintiff filed a motion to compel the production of the original complaint filed against Dr. Pesa. Plaintiff filed a second motion to compel the production of Dr. Schneider's credentialing file. Mt. Carmel opposed both motions and filed motions for a protective order.
 {¶ 6} The trial court rendered an opinion and ordered the production of the documents in dispute for purposes of conducting an in camera inspection and to determine whether the privilege applied to any of the documents. The trial court then determined that plaintiff was entitled to certain documents. The trial court separated the documents into two envelopes, one containing "documents to be disclosed" and the other containing "documents not to be disclosed." The trial court did not redact any patient names from the documents disclosed to plaintiff's counsel. Mt. Carmel filed the instant appeal.
 {¶ 7} Mt. Carmel asserts the following assignments of error:
I. The trial court erred to the prejudice of Mount Carmel by releasing privileged documents to Plaintiff.
II. The trial court erred when it conducted an in camera inspection of privileged documents.
III. The trial court erred when it conducted an in camera inspection of privileged documents when plaintiff's request was limited solely to documents not otherwise available from an original source.
 {¶ 8} Initially, we find the trial court's order granting plaintiff's motion to compel, in part, is a final appealable order. R.C. 2505.02(B) states that an order is final and may be reviewed, affirmed, modified or reversed, when it is one of the following:
(4) An order that grants or denies a provisional remedy and to which both of the following apply:
(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.
(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.
A provisional remedy is defined as "a proceeding ancillary to an action, including, but not limited to, a proceeding for a preliminary injunction, attachment, discovery of privilegedmatter, or suppression of evidence." R.C. 2505.02(A)(3). (Emphasis added.)
 {¶ 9} Here, the issue is whether the trial court erroneously ordered the disclosure of Mt. Carmel's "peer review" documents. As stated above, we find that the trial court's order is final and appealable. To hold otherwise would not allow meaningful review of whether the documents are in fact privileged. Nesterv. Lima Mem. Hosp. (2000), 139 Ohio App.3d 883, 885.
* * * [O]nce privileged information is disclosed there would be no way for it to be made private once again. Finding information to be privileged and not subject to an exception allowing for its disclosure after the fact clearly does not afford the appealing party a meaningful or effective remedy. * * * [2]
Accordingly, we turn our attention to the assignments of error asserted by Mt. Carmel.
 {¶ 10} We address the second and third assignments of error first. Mt. Carmel takes issue with the trial court's threshold decision to conduct an in camera inspection as Mt. Carmel maintains the subject documents are privileged. Contrary to Mt. Carmel's contention, the Ohio Supreme Court reaffirmed a trial court's inherent authority to control discovery in State ex rel.Grandview Hosp. Med. Ctr. v. Gorman (1990), 51 Ohio St.3d 94. In Gorman, the plaintiff alleged that the hospital negligently approved the credentials of a doctor. The issue was whether the trial court had authority to conduct an in camera inspection of hospital records to determine whether the documents were statutorily privileged under R.C. 2305.251. Id. at 94-96. The court recognized the extensive privilege accorded to hospital committee proceedings and records for purposes of peer review. Id. at 95. The court also recognized an exception to that privilege for documents and information or records "otherwise available" from "original" sources. Id. at 96. The court stated that this was a "major" exception. Id.
 {¶ 11} The court concluded that the trial court must sometimes conduct an in camera inspection to determine if the privilege in fact applies and to which documents it applies. Id. The court stated:
* * * Faced with this claim of privilege, and its exception, [the trial judge] clearly had authority to inspect the documents, in camera, to determine if and how the privilege applied and to separate out nonprivileged portions. Applying this R.C. 2305.251
privilege to actual documents is not necessarily easy. An in camera inspection is only a minimal first step. * * *
Id. at 96.
 {¶ 12} The court also cited Henneman v. Toledo (1988),35 Ohio St.3d 241. In that case, Justice Douglas stated the following with regard to an executive privilege:
In camera inspection of the documents by the trial judge is the most appropriate method of dealing with claims of executive privilege. * * * By conducting such an inspection in chambers away from the jury and without the presence or participation of counsel for either party, the trial judge may make the necessary determination without compromising the confidentiality of any information he finds to be privileged.
Gorman, quoting Henneman. (Citations omitted.)
 {¶ 13} Mt. Carmel maintains the documents plaintiff sought were privileged and not available from the original source under R.C. 2305.251. Therefore, the trial court's inspection was not warranted. We disagree. We find that based on Gorman, the trial court was well within its discretion in conducting an in camera inspection. Just as in Gorman, the plaintiff here sought records that were potentially subject to the statutory privilege under R.C. 2305.251. The most appropriate way to determine if the privilege applied and to what documents it applied, was to conduct an in camera inspection. Trangle v. Rojas,150 Ohio App.3d 549, 556, 2002-Ohio-6510 (it is incumbent upon the trial court to hold an in camera inspection of documents or records to determine if such documents or records are discoverable or privileged under R.C. 2305.251; failure to do so constitutes an abuse of discretion). There was no compromise to the confidentiality of any information the trial court found to be privileged. Therefore, the trial court did not err.[3]
Accordingly, Mt. Carmel's second and third assignments of error are overruled.
 {¶ 14} In their first assignment of error, Mt. Carmel argues the trial court erred to the prejudice of Mt. Carmel by releasing privileged documents to plaintiff. Mt. Carmel argues that these documents are privileged under R.C. 2305.24, 2305.25 (now2305.251),[4] and 2305.251 (now 2305.252). The former version of R.C. 2305.24 provided in pertinent part "[a]ny information, data, reports, or records made available to a quality assurance committee or utilization committee of a hospital * * * are confidential and shall be used by the committee and the committee members only in the exercise of the proper functions of the committee." Former R.C. 2305.251 provided the following:
Proceedings and records of all review committees described in section 2305.25 of the Revised Code shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care professional, a hospital, a long-term care facility * * * arising out of matters that are the subject of evaluation and review by the committee. No person in attendance at a meeting of a review committee or serving as a member of a review committee shall be permitted or required to testify in any civil action as to any evidence or other matters produced or presented during the proceedings of the committee or as to any finding, recommendation, evaluation, opinion, or other action of the committee or a member thereof. * * *
 {¶ 15} However, there is an exception to the privilege stated as follows:
* * * Information, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were presented during proceedings of a committee nor should any person testifying before a committee or who is a member of the committee be prevented from testifying as to matters within the person's knowledge, but the witness cannot be asked about the witness's testimony before the committee or opinion formed by the witness as a result of the committee hearing.
Id.
 {¶ 16} Although the trial court conducted an in camera inspection of the documents in dispute and allowed disclosure of certain documents to the plaintiff, the trial court did not articulate in its final order its reasons for the decision. The court's first opinion dated on or about January 28, 2002, addresses the parties' arguments but ultimately orders production for purposes of the in camera inspection. The second opinion is more akin to an order wherein the court states it separated the documents and placed them in the applicable envelopes, and sealed the documents for purposes of appeal. However, in neither opinion does the court state its reasoning for determining which documents were privileged or whether an exception to the privilege applies. If the court relied upon the "original source" exception for some of the documents and not others, neither opinion demonstrates how the court came to that conclusion, specifically how the documents were available from the original source. Therefore, the court finds that it cannot meaningfully address the first assignment of error. Accordingly, the court finds it necessary to reverse and remand to the trial court as to this assignment of error. On remand, the trial court should state its reasons for distinguishing discoverable and non-discoverable documents and if a privilege applies, and whether there is an applicable exception to that privilege. Accordingly, the first assignment of error is sustained in part and this matter is remanded to the trial court for further proceedings consistent with this opinion.
 {¶ 17} Based on the foregoing, the second and third assignments of error are overruled. The first assignment of error is sustained in part and the judgment of the Franklin County Court of Common Pleas is reversed and remanded with instructions.
Judgment affirmed in part, reversed in part and cause remanded with instructions.
Lazarus, P.J., and Sadler, J., concur.
[1] Former R.C. 2305.251 is now 2305.252, effective April 9, 2003. There are various changes in the new version; however, because the trial court's decision was rendered on April 7, 2003, under former R.C. 2305.251, that version is the one referenced and relied upon in this opinion.
[2] As a side note, the current version of R.C. 2305.252, which replaced R.C. 2305.251, specifically states that an order by a court to produce the records or proceedings described in this section, for either discovery or use at trial, is a final order.
[3] Mt. Carmel acknowledges that the trial court has authority to conduct an in camera inspection under Gorman. However, Mt. Carmel asserts the second and third assignments of error to preserve the issue for appeal to the Ohio Supreme Court. Mt. Carmel maintains that the Gorman case is incorrect.
[4] Former R.C. 2305.25 provided in part "[n]o hospital, * * * and no individual who is a member or employee of any of the following committees shall be liable in damages to any person for any acts, omissions, decisions, or other conduct within the scope of the functions of the committee: (A) A utilization review committee, quality assurance, or tissue committee of a hospital * * *."